1

2

3

4                       UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6                              SAN JOSE DIVISION

7

8     UNITED STATES OF AMERICA,              Case No. 18-cr-00466-BLF-12 (VKD)

          Plaintiff,
9
                                             **DETENTION ORDER**
       v.
10

11    JEFFREY LOPEZ,

          Defendant.
12

13        The United States moved for detention of defendant Jeffrey Lopez pursuant to 18 U.S.C.

14   § 3142(f)(1).  The Court held a hearing on the government's motion on October 31, 2018.  The

15   parties also provided the Court with written submission in support of their respective positions.

16   Dkt. Nos. 76, 77.  Mr. Lopez was present at the hearing and represented by counsel.  For the

17   reasons stated on the record during the hearing and as set forth below, the Court finds that there

18   are no conditions, or combination of conditions, of release that would reasonably assure the safety

19   of other persons and the community.[1]

20   **I.     BACKGROUND**

21        As set forth in the indictment, the government charges Mr. Lopez with racketeering

22   conspiracy, conspiracy to commit murder in aid of racketeering, and conspiracy to commit assault

23   with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. §§ 1962(d), 1959(a)(5),

24   and 1959(a)(6).  The government alleges that Mr. Lopez engaged in the conduct charged in the

25   indictment in furtherance of the activities of a Norteño street gang.  In addition to the indictment,

26

27   [1] At Mr. Lopez's initial appearance the government moved for detention solely on the basis that
     Mr. Lopez posed a danger to others and to the community.  The government did not move for
28   detention on the basis of risk of non-appearance before submitting its written proffer on October
     31, 2018.

1    the government filed a written proffer in support of its motion for detention. Dkt. No. 76. Mr.

2    Lopez filed a motion for release and responded to the government's proffer. Dkt. No. 77.

3    **II.      LEGAL STANDARDS**

4         On a motion for pretrial detention, the government bears the burden to show by clear and

5    convincing evidence that no condition or combination of conditions of release will reasonably

6    assure the safety of other persons or the community. 18 U.S.C. § 3142(f)(2).

7         In evaluating whether pretrial release is appropriate, the Court must consider (1) the nature

8    and circumstances of the offense charged, (2) the weight of the evidence against the defendant,

9    (3) the defendant's history and characteristics (including his character, physical and mental

10   condition, family ties, employment, financial resources, length of residence in the community,

11   community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and

12   record concerning appearance at court proceedings), and (4) the nature and seriousness of the

13   danger to any person or the community that would be posed by the defendant's release. 18 U.S.C.

14   § 3142(g).

15   **III.     DISCUSSION**

16        **A.      Nature and Circumstances of the Offense**

17        According to the indictment and the government's proffer, Mr. Lopez participated in a

18   conspiracy to assault or kill a fellow gang member. The government alleges that in 2013 Mr.

19   Lopez and other Salinas-based Norteño street gang members use violence to further the interests

20   of the gang. Specifically, the government alleges that, while housed with other Norteño gang

21   members in the K-5 housing unit in Monterey County Jail, Mr. Lopez kicked one of the victims in

22   the face and hit the victim's head against the wall and window after the victim had been stabbed

23   by another co-defendant. Dkt. No. 1, ¶ 68. Mr. Lopez faces maximum terms of imprisonment

24   ranging from 3 years to life on the charged counts. Regardless of the merits of the allegations in

25   the indictment, there is no question that the offenses charged are violent and serious.

26        **B.      Weight of the Evidence**

27        The weight of the evidence is difficult to assess at this stage of the case. A grand jury

28   heard evidence of at least the offenses charged in the indictment and found probable cause

1    supported those charges.  In addition, the government proffers that the evidence supporting the

2    charged offenses includes the testimony of witnesses to the offenses and photographs, as well as

3    the testimony of law enforcement.  The Court observes that the weight of the evidence is the least

4    important consideration.  *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

5          **C.       Personal Characteristics of the Defendant**

6          Mr. Lopez is 26 years old.  He has lived in Salinas for most of his life, although he has not

7    always had a stable residence and has been either homeless or incarcerated for significant periods.

8    He left high school in the 10th grade.  He is currently unemployed and has not had regular paying

9    employment in the past.  However, Mr. Lopez is the primary caregiver for his young son and his

10   partner's two other children.  Mr. Lopez does not consume alcohol, but frequently uses marijuana.

11   He has no history of mental health issues.

12         Mr. Lopez has several arrests and three adult criminal convictions, as well as several parole

13   violations during the past two years.  The government proffers evidence that Mr. Lopez has

14   displayed gang-related signs and tattoos in social media postings as recently as March 2017.  Dkt.

15   No. 76 at 6-7.  The government also contends that Mr. Lopez has made recent statements in

16   connection with his housing preference while in custody that suggest he maintains an affiliation

17   with Norteños.  *Id.* at 7.  The Court gives this little weight, as such statements may be motivated

18   by in-custody safety concerns rather than a desire to participate in gang-related activity.

19         While Mr. Lopez does not appear to have any financial resources of his own, his partner

20   and his partner's aunt, while both of modest means, would be prepared to co-sign an unsecured

21   bond on Mr. Lopez's behalf.  And if released Mr. Lopez would reside with his partner in Salinas.

22   At the present time, no person is proffered to serve as a custodian for Mr. Lopez, and he is not able

23   to reside in any location other than Salinas.

24         **D.       Nature and Seriousness of the Danger to Others Posed by Defendant's Release**

25         In addition to the conduct charged in the indictment, the government has proffered

26   evidence (described above) of Mr. Lopez's history of and recent participation in gang-related

27   activity.  While the Court does not give substantial weight to uncharged conduct and conduct for

28   which Mr. Lopez has not suffered a conviction, the indictment alone alleges serious crimes of

3

1  violence.  Mr. Lopez's professed desire to disassociate himself from gang affiliation and gang-

2  related activity, and his desire to change his behavior for the sake of his son, are commendable,

3  but this change of heart appears to have been very recent and the Court finds it difficult to credit

4  fully without more evidence that there has been a real and substantial change and disavowal of all

5  gang association.

6            **E.**     **Consideration of Conditions of Release**

7        The Bail Reform Act of 1984 favors pretrial release, not detention.  Accordingly, the Court

8  has carefully considered whether there are any conditions of release that will reasonably assure the

9  safety of others and the community.  In particular, the Court has considered whether a

10  combination of location restrictions, monitoring, and substance abuse counseling or treatment,

11  together with the requirement of a significant unsecured bond, would provide such reasonable

12  assurance.  The Court concludes they would not.  Given Mr. Lopez's criminal history, recent

13  gang-related conduct, and the seriousness of offenses charged, the conditions of release proposed

14  by Mr. Lopez are not sufficient, particularly in the absence of a reliable custodian.

15        For these reasons, the Court finds that, based on the present record, the government has

16  carried its burden to show by clear and convincing evidence that no condition, or combination of

17  conditions, of release could be imposed that would reasonably assure the safety of other persons or

18  the community, and Mr. Lopez has not rebutted that showing.

19  **IV.**     **CONCLUSION**

20        Accordingly, defendant Jeffrey Lopez is committed to the custody of the Attorney General

21  or his designated representative for confinement in a corrections facility separate, to the extent

22  practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

23  Mr. Lopez shall be afforded a reasonable opportunity for private consultation with defense

24  counsel.  On order of a court of the United States or on the request of an attorney for the

25  government, the person in charge of the corrections facility shall deliver Mr. Lopez to the United

26

27

28

4

States Marshal for the purpose of appearances in connection with court proceedings.

**IT IS SO ORDERED.**

Dated: November 1, 2018

VIRGINIA K. DEMARCHI
United States Magistrate Judge